Tukley, J.
delivered the opinion of the court.
In March, 1830, Gideon J. and Granville A. Pillow, two of the defendants to the present bill of complainant, administered upon the estate of their deceased father, Gideon Pillow. Abner Pillow the complainant was indebted to the deceased Gideon, in a large amount, for a part of which the said Gideon had obtained judgment in his lifetime, and for the balance, his administrators after his death. Upon these judgments executions Were issued to several different counties in the Western divi *645 sion of Tennessee, and levied upon several tracts of land, ■which were sold at a very inadequate price, and left a large amount of the judgments unsatisfied. Some of these lands were bought in by the administrators and some by third persons. Abner Pillow, being in straightened circumstances, and it being believed that the lands sold (which were subject to redemption under our statute) were of value sufficient or more, to pay the full amount of the judgments, for the mutual benefit of both parties it was agreed between them on the 18th day of March, 1832, that Adam R. Alexander of Shelby county, Jesse Allen of Fayette county, and John H. Bills of Har-deman county, should be commissioners for the purpose of examining and valuing, upon oath, at cash valuation, the different tracts of land previously sold by executions upon the before mentioned judgments, which tracts of land so valued, if of sufficient amount were agreed to be received in full satisfaction of said judgments, if of more than sufficient value, then so much thereof as would he a satisfaction, if of less, then the said commissioners were to value other lands of the said Abner, of an amount sufficient to malee up the deficit. These lands were to be conveyed by the said Abner to the said G ideon J. and Granville A. Pillow, in fee simple with general warranty, discharged from all previous amount of taxes due thereon and other incumbrances. And that if these provisions of the agreement should never be carried into effect, the compromise was not to effect in any shape whatever, the rights of said Gideon and Granville, to any of the lands purchased by them under said judgments.
The provisions of this agreement never were carried into effect. An attempt was made a short time after its execution to do so, as to the lands in Shelby county, not by the commissioners originally appointed, but by others substituted by mutual consent of the parties, which proved an entire failure, each party endeavoring to cast the blame thereof upon the other’s shoulders. We, however, think that the proof shows satisfactorily that it must rest upon the complainant Abner, and that the solution of the difficulty is to be found in that admission made in his bill, that in as much as lands were rising in value, *646 he was satified with any delay the administrators might think proper to extend. No doubt he was, but then, this very reason must of necessity have produced the opposite effect upon the administrators, and as they were acting in a fiduciary character, they had the strongest additional motives for a speedy action upon said performance of the agreement. We accordingly find them in a few months after, taking the remedy into their own hands, by proceeding upon their judgments, and acquiring the legal title to a portion of the lands of the said Abner, to an amount more than sufficient, according to the estimate fixed by the proof, by some $2000, than would have satisfied the judgments.
This was done in the year 183.2, with the full knowledge of the complainant. The administrators afterwards proceeded to settle up the estate of their deceased father, distributed the effects, and divided the real estate, by decree of court, among his heirs at law. The complainant witnessed all this, and continued to slumber on his rights, until the 12th day of August, 1839, when he for the first time filed this bill of complaint. Upon this statement, is he entitled to relief? We think not; but that monstrous injustice would be done if at this late period, the terms of the agreement of 1832, were specifically enforced.
We think this contract cannot be specifically enforced for two reasons. 1st. Because it is not in the power of the court to carry it into effect; but that an attempt to do so, must be to make a new contract for the parties. By the terms of the agreement, the price at which the lands were to be taken in payment by the administrators, was to be fixed by the commissioners appointed upon oath; this was a special trust reposed, which can only be changed by the parties themselves. This court cannot substitute others in their stead, which it would have to do if it were to undertake to execute the agreement, as it has no power over the appointed commissioners. And so are the authorities. See Mebres vs. Gerry, 14 Ves. 400: Agar vs. McCon, 1 Con. Eng. Ch. Rep. 526: Hofcroft vs. Hickman, same book, 579: 2 Story’s Equity, Interpleader, 680.
2. If this court could have had power originally to execute *647 this agreement, the conduct of the complainant has most'unquestionably lost him the remedy. The statement of this case is sufficient to show that this is the law upon the subject of specific performance; it so well settled, so Tar as this branch of it is concerned, that we deem it unnecessary to enter into an investigation of it. Let it suffice, that it rests upon principles of mutuality, and that the jurisdiction will never be exercised, when great and unreasonable advantages is to be the result to one party, and gross and irremedial injustice to the other. Such would be the case here; to let one party after a lapse of seven years, who has been sleeping with his eyes open, waiting his opportunity to make an advantageous speculation, till the rights and relations of the parties have been all changed, and .portions of the property sold to innocent purchasers, by innocent holders, would indeed be monstrous.
But in addition to all this, if the speculation had turned out a losing one, on the part of the administrators, they must have borne the loss. The complainant then might gain, but could not lose, if relief be given to' him. This is no mutuality of justice, but a game of fast and loose, which a court of equity never can permit. Some incidental questions have been argued not affecting this, the main point of the case, which is decisive of it.
The decree of the chancellor will, therefore, be affirmed, and the bill dismissed.